## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHAMOS J. JOSEPH,                                )
                                                 )
                        Plaintiff,               )        Case No. 04-CV-737-TCK-FHM
                                                 )
v.                                               )
                                                 )
BRIDGESTONE FIRESTONE TIRE AND                   )
RUBBER COMPANY RETAIL AND                        )
COMMERCIAL OPERATION, LLC,                       )
                                                 )
                                                 )
                        Defendant.               )

### OPINION AND ORDER

Before the Court is Defendant's Motion to Compel Arbitration and Dismiss, or, in the

Alternative, Stay the Proceedings, and Motion for Costs and Fees (Docket No. 14).

I.      Factual Background

Plaintiff Shamos J. Joseph ("Plaintiff"), an African-American male, was a Senior Technician

with Bridgestone Firestone Tire and Rubber Company Retail and Commercial Operation, LLC

("Defendant") from 1983 to 2003. After suffering a stroke in October 2003, Plaintiff took long-term

disability leave. On August 17, 2005, Plaintiff filed an Amended Complaint against Defendant

asserting claims for racially hostile work environment, negligent hiring and retention, negligent

training, violation of 42 U.S.C. § 1981, and intentional infliction of emotional distress. Defendant

has moved to compel arbitration of these claims, alleging that Plaintiff has agreed to arbitrate all

such claims as a term of his employment.

Defendant had an Employee Dispute Resolution Plan dated October 1, 1995 ("Original

EDRP"). In early 2002, Plaintiff's supervisor, Linda Brady ("Brady") presented all employees with

1

a copy of the Original EDRP and asked them to sign a form entitled "Agreement and Acknowledgment of Bridgestone/Firestone, Inc. Employee Dispute Resolution Plan." Plaintiff appears to have signed this form on May 8, 2002. Plaintiff disputes, however, that the signature on the form is his: "The signature on that document is not my signature. I never signed that document at any time. I refused to sign that document when asked to do so by store manager Linda Brady on or around May 2002." (Aff. of Shamos Joseph, Plf's Ex. 4.)

As of July 1, 2003, the Original EDRP was amended ("Amended EDRP") and again distributed to current employees. Current employees were asked to sign a form entitled "Current Employee Acknowledgment Form." Plaintiff refused to sign the form. Plaintiff's form, which is dated September 29, 2003, contains a hand-written note stating, "Shamos Joseph - Received Booklet 9-29-03 But Refuse to Sign Form." The form is signed by Brady and another witness.

The front cover of the Original EDRP contains the following statement:

> THE EMPLOYEE DISPUTE RESOLUTION PLAN BECOMES EFFECTIVE ON OCTOBER 1, 1995, AS THE EXCLUSIVE MEANS OF RESOLVING EMPLOYMENT-RELATED LEGAL CLAIMS. THAT MEANS IF YOU APPLY FOR EMPLOYMENT, ACCEPT EMPLOYMENT, OR CONTINUE WORKING AT BRIDGESTONE/FIRESTONE ON OR AFTER THAT DATE, YOU AGREE TO RESOLVE ALL SUCH DISPUTES THROUGH THE MEDIATION AND BINDING ARBITRATION PROCESS DESCRIBED HEREIN INSTEAD OF THROUGH THE COURT SYSTEM.

The front cover of the Amended EDRP contains the following similar statement:

> THE EMPLOYEE DISPUTE RESOLUTION PLAN IS THE EXCLUSIVE MEANS OF RESOLVING EMPLOYMENT-RELATED DISPUTES. ALL PERSONS WHO APPLY FOR EMPLOYMENT, ACCEPT EMPLOYMENT, CONTINUE WORKING FOR, OR ACCEPT ANY PROMOTIONS, PAY INCREASES, BONUSES, OR ANY OTHER BENEFITS OF EMPLOYMENT FROM BFS RETAIL & COMMERCIAL OPERATIONS, LLC AGREE TO RESOLVE ALL SUCH DISPUTES THROUGH THE MEDIATION AND BINDING ARBITRATION PROCESS DESCRIBED HEREIN INSTEAD OF THROUGH

2

THE COURT SYSTEM.

Plaintiff continued to work for Defendant after his alleged refusals to sign the two acknowledgment forms.

II.      Applicable Legal Standard

The Federal Arbitration Act requires the enforcement of arbitration agreements that are (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law.  *See* 9 U.S.C. § 2.  Plaintiff argues that there is no agreement to arbitrate because the signature appearing on the May 8, 2002 acknowledgment form is not his signature and because he refused to sign the acknowledgment form after the EDRP was amended in 2003.  Therefore, even assuming he did agree to the Original EDRP, Plaintiff argues that he rescinded such agreement or failed to further assent to arbitration by refusing to agree to the Amended EDRP.  Defendant argues that (1) Plaintiff has not presented sufficient evidence to create a question of fact as to whether the signature appearing on the May 8, 2002 form is his; (2) any rejection of the Amended EDRP is irrelevant because Plaintiff agreed to the Original EDRP and this agreement cannot be rescinded by a later refusal; and (3) whether or not Plaintiff signed either form is irrelevant because his continued employment, combined with the undisputed fact that he received notice of the Original EDRP and the Amended EDRP, constituted acceptance of this term of employment.  Thus, the dispute in this case is whether the parties have a valid agreement to arbitrate under general principles of contract law.

"When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).  When

considering a motion to compel arbitration that is opposed on the ground that no agreement existed, the district court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3rd Cir. 1980). Although there is generally a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement. *See Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). Whether a valid agreement to arbitrate exists is a question of state contract law. *Avedon Eng'g*, 126 F.3d at 1286-87.

III.     Analysis

A.     *May 8, 2002 Acknowledgment Form Regarding Original EDRP*

A signature appearing to be Plaintiff's is on the May 8, 2002 acknowledgment form. Plaintiff informed Defendant, after being asked to submit to arbitration, that he denied this was his signature. In its motion to compel arbitration, Defendant presented the Declaration of Gary Szabo ("Szabo"), a Questioned Document Examiner. Szabo examined fifty-six documents containing signatures of Plaintiff and concluded as follows: "Based on the combination of significant writing characteristics . . . I concluded that the Shamos Joseph signature located on the Q1 document [May 8, 2002 acknowledgment] is of common authorship with the submitted known signatures of Shamos Joseph." (Def.'s Mot. to Compel Arb., Ex. B., ¶ 15.) In response, Plaintiff presented an Affidavit denying that it is his signature appearing on the May 8, 2002 form.

Defendant argues that there is a presumption that the signature is genuine and that a general denial by Plaintiff is insufficient to rebut this presumption and create a question of fact. The Oklahoma statute and case cited by Defendant arise in the context of an "instrument" under the Oklahoma Uniform Commercial Code. *See* 12A OKLA. STAT. § 3-308(a) (2001); *A.L. Jackson*

4

*Chevrolet, Inc. v. Oxley*, 564 P.2d 633, 635 (Okla. 1977); *see also* 80 C.J.S. Signatures § 15 (stating general rule that "there is a presumption that a written signature on an instrument was written by the purported signer").[1] The Court has been unable to locate a similar Oklahoma case or statute creating a presumption in the context of a non-notarized signature on an employment contract or any other non-commercial contract. Accordingly, the Court does not apply any legal "presumption" in evaluating Plaintiff's signature on the 2002 form.

Even without a legal "presumption" attaching to the signature, however, the Court concludes that Plaintiff has failed to create a genuine issue of material fact as to whether it is his signature. In *Peyton v. State of Newburgh, Inc.*, 14 A.D.3d 51 (N.Y. App. 2004), the court evaluated a tenant's signature on a lease rider. The defendant presented evidence of a handwriting expert who reviewed eighteen other signatures of the plaintiff and concluded that the signature on the lease rider was authentic. *Id.* at 54. In response, the tenant's mother submitted an affidavit denying that the signature was that of the tenant, who was deceased. The court reasoned that "something more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature" and that the "record contains no factual assertions by plaintiff to support the claim of forgery." *Id.* The court further reasoned that "[e]ven without the forensic expert's affidavit, the lease rider containing the decedent's signature, standing alone, would have been sufficient to withstand plaintiff's bald assertion of forgery for summary judgment purposes." *Id.*

In this case, Defendant's expert examined fifty-six documents produced by Plaintiff and

---

[1] With the exception of one, the cases from other jurisdictions cited by Defendant also arise in the context of a negotiable instrument. (*See* Def.'s Reply in Support of Mot. to Compel Arbitration at 3 n.4.)

concluded the signature was authentic. Plaintiff has offered nothing more than a bald assertion that the signature on the May 8, 2002 form is not his signature. He provides no other evidence that would give rise to even an inference of forgery. The Court concludes that Plaintiff's evidence is insufficient to create a question of fact as to the authenticity of his signature on the May 2002 form. Accordingly, the Court concludes as a matter of law that Plaintiff signed the May 2002 form, thereby agreeing, at least at that time, to arbitrate his claims arising out of the employment relationship.

B.       *September 29, 2003 Acknowledgment Regarding Amended EDRP*

Plaintiff's signature does not appear on the September 29, 2003 form, and Brady wrote on the form that Plaintiff refused to sign it. The issue presented by this refusal is whether it functioned to rescind or nullify any prior agreement to arbitrate. In *Langdon v. Saga Corp.*, 569 P.2d 524, 528 (Okla. 1977), the court held that, where an employee at will foregoes options to refuse future performance in reliance on articulated personnel policies, the employer is bound by those policies insofar as they have accrued to an employee for performance rendered. In so holding, the court reasoned that the "personnel manual did not modify any prior [employment] contract but *became a new contract* which defined the employer-employee relationship during the period the policy was in effect and the employee performed." *Id.* (emphasis added). Plaintiff relies on this case for his argument that when an employer makes a modification to an employment contract, such as the Amended EDRP, the existing contract is rescinded and a new employer-employee relationship is created under the new terms. Therefore, Plaintiff argues that his refusal resulted in refusal of the new offer and became instead a counter-offer to continue employment without agreeing to arbitrate. Defendant argues that this result would turn contract law "on its head" and that, if the parties did not agree to the Amended EDRP, the Original EDRP remained in force.

The Court views the Original EDRP and the Amended EDPR as a specific dispute resolution plan that is outside and in addition to Plaintiff's general employment contract. It is a stand-alone plan and therefore an "offer" for a new term of employment that is not part of a larger general employment contract or a personnel manual. It is a separate policy that was presented to Plaintiff by Defendant as a new term of his continued employment on two different occasions. On the first occasion, Plaintiff acknowledged receipt, signed the form, and indicated his acceptance of Defendant's offer to arbitrate to submit all claims to arbitration. On the second, Plaintiff did not acknowledge receipt, did not sign the form, and indicated his rejection of Defendant's offer to arbitrate. The Court concludes that, under these specific circumstances and in light of an employee's unequal bargaining power in the employer/employee relationship, the employee's express refusal to sign the second form functioned as a rejection of the second offer to arbitrate and nullified any prior agreement to arbitrate. This is because the underlying question the Court must evaluate is whether there was a meeting of the minds between Plaintiff and Defendant regarding whether claims arising out of the employment relationship filed after September 29, 2003 would be submitted to arbitration. Even assuming there was mutual assent to the Original EDRP, the Court is simply unwilling to conclude that Plaintiff's assent continued to exist after Plaintiff expressly refused to sign a form that asked him to acknowledge his receipt and acquiescence to the Amended EDRP. Instead, Plaintiff refused to acknowledge that he received the form and refused to indicate any willingness to arbitrate claims arising after that date. Defendant was on notice that Plaintiff had refused to so agree. Although the Court may not reach a similar conclusion in a commercial contract setting, in this setting, Plaintiff's refusal to sign the September 29, 2003 form serves as an unequivocal indication of Plaintiff's intention to refuse Defendant's offer to arbitrate all claims arising out of the

7

employment relationship after that date. He was, in fact, willing to refuse to sign the form at the risk of losing his job.

      C.     *Continued Employment as Acceptance of Offer to Arbitrate, Notwithstanding Plaintiff's Refusal to Sign September 2003 Acknowledgment Form*

Defendant finally argues that, even if Plaintiff expressly refused to arbitrate his claims, Plaintiff accepted Defendant's offer to arbitrate his claims by reason of his continued employment. Under Oklahoma law, an at-will employee impliedly accepts prospective modifications in his terms of employment by remaining on the job after receiving notice of the modifications. *See Robinson v. Phillips Petroleum Co.*, 54 P.2d 322, 323 (Okla. 1936) (stating that plaintiff's continuing of employment, after various notices of modifications in amount of sales commission, constituted assent to such modifications); *Willock v. Downtown Airpark, Inc.*, 130 F. Supp. 704, 705 (10th Cir. 1955); *DeArmond v. Halliburton Energy Services, Inc.*, 81 P.3d 573, 579 (Ct. App. N.M. 2003) (stating that Oklahoma, like New Mexico, implies "acceptance of prospective modifications in terms of employment when at-will employees remain on the job"). Thus, in Oklahoma, where an employee receives actual notice of an employer's policy of submitting all claims to binding arbitration and then continues to work after receiving actual notice, this is, as a general rule, sufficient to constitute the employee's acceptance of a binding agreement to arbitrate. *See DeArmond*, 81 P.3d at 579; *Cole v. Halliburton Co.*, No. CIV-00-0862, 2000 WL 1531614, at * 2 (W.D. Okla. 2000).

In this case, it is undisputed that Plaintiff had actual notice of the Original EDRP because Plaintiff admits he was presented with it by Brady. (Aff. of Shamos Joseph, Plf's Ex. 4.) It is also undisputed that Plaintiff had actual notice of the Amended EDRP because the notation on

8

the acknowledgment form states that Plaintiff received actual notice but refused to sign the form.

Thus, the case is factually distinguishable from the case relied on by Plaintiff, *DeArmond*, in

which the defendant merely mailed the materials to the plaintiff and offered no further evidence

that the plaintiff received, read, or understood the arbitration agreement. Here, Plaintiff admits to

having notice of the Original EDRP and the Amended EDRP, and both plans include an express

statement that continued employment would constitute acceptance. Thus, the *DeArmond* case

does not end the inquiry.

However, this case is also factually distinguishable from Defendant's principal cases,

*Robinson* and *Cole*, because the plaintiffs in these cases did not indicate a rejection of a change

in a term of employment when such change was presented to them in writing. In this case, at the

same time Plaintiff continued to work and therefore "impliedly" accepted the offer to continue

employment knowing he would have to submit all claims to arbitration, he also expressly refused

to sign a form given to him by his employer regarding the employer's "offer" to submit all claims

to arbitration. Neither party has cited case law to the Court in which a party has expressly

refused to sign an acknowledgment form regarding an agreement to arbitrate but has then

continued to work, with notice and knowledge that the arbitration agreement states that continued

employment constitutes acceptance.

The Court concludes that Plaintiff's express refusal to acknowledge receipt of the

Amended EDRP in 2003 evidences a lack of acceptance by Plaintiff and a lack of mutual assent

between the parties regarding the agreement to arbitrate, notwithstanding Plaintiff's continued

employment. While continued employment generally constitutes implied acceptance of

employment terms, it defies notions of fairness to conclude that Plaintiff's "implied" acceptance

9

by continuing to work trumps or overrides Plaintiff's express rejection of the Amended EDRP. In other words, the cases discussing implied acceptance where there exists actual notice do not, as does this case, also involve express rejection evidenced in writing at the time the plaintiff was presented with the "actual notice" by the employer.  In short, the Court cannot conclude that Plaintiff "consciously assented" to arbitrate when, at least in his mind, he expressly refused to arbitrate in September 2003.  *Cf. DeArmond*, 81 P.3d at 579 ("We believe the principle of conscious assent is particularly crucial in the at-will employment context, where acceptance may be manifested by continuing in a routine activity.").  Accordingly, the Court concludes, based on the unique facts presented, that Plaintiff's continued employment did not constitute implied acceptance of Defendant's offer to arbitrate.

D.    Conclusion

In light of Plaintiff's unequal bargaining power and the nature of an employer-employee relationship, Plaintiff's refusal to sign the Amended EDRP functioned to destroy any meeting of the minds that may have existed at the time Plaintiff signed the May 8, 2002 acknowledgment form regarding the Original EDRP.  Thus, the Court concludes there was no meeting of the minds between Plaintiff and Defendant  as to whether claims filed after July 2003 would be submitted to arbitration.  The Court further concludes that Plaintiff's continued employment after being notified of the Amended EDRP did not function as "implied" acceptance.

IV.    Motion for Costs and Fees

Defendant argues the Court should award it costs and fees associated with the motion to compel based on the Court's inherent power to sanction based on bad-faith conduct.  Defendant argues that Plaintiff and Plaintiff's counsel have engaged in bad-faith conduct because counsel

for Plaintiff initially informed Defendant that Plaintiff would submit to arbitration but then "concocted" the forgery story regarding the 2002 form. Counsel for Plaintiff clearly explained in the response brief that he was not aware that, at the time he agreed to submit to arbitration, that Plaintiff denied the signature on the 2002 form was his.[2] As soon as he learned this, Plaintiff's counsel informed Defendant that Plaintiff would not submit to arbitration. Although the Court concluded Plaintiff's flat denial of his signature did not create a question of fact as to the 2002 form, the Court finds no evidence of bad-faith conduct by Plaintiff or Plaintiff's counsel.

V.      Conclusion

Defendant's Motion to Compel Arbitration and Dismiss, or, in the Alternative, Stay the Proceedings, and Motion for Costs and Fees (Docket No. 14) is DENIED. There are no remaining issues of fact or law regarding the motion to compel arbitration, and the parties shall proceed with the substantive claims in this Court. The stay entered on March 28, 2006 is LIFTED, and the parties are ORDERED to submit a Joint Status Report no later than Friday, August 4, 2006.

IT IS SO ORDERED this 12th day of July, 2006.


_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE


---

[2] The Court is not aware if counsel for Plaintiff knew of Plaintiff's refusal to sign the 2003 form, which is the fact in this case the Court finds to be crucial.

11